**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDWARD LICEAGA, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 19-CV-107 |
| ) | |
| vs. ) | |
| ) | |
| JETSMARTER, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND COMPEL ARBITRATION**

Defendants JetSmarter, Inc. and Sergey Petrossov (collectively "JetSmarter"), for their Memorandum of Law in Support of their Motion to Dismiss and Compel Arbitration, state as follows:

### I.  PRELIMINARY STATEMENT

This action stems from contracts that Plaintiffs entered into with JetSmarter, under which Plaintiffs paid JetSmarter certain fees, and JetSmarter agreed to provide Plaintiffs with (among other things) access to travel-related services (the "Membership Agreement"). The Membership Agreement contains a dispute resolution clause (the "Arbitration Provision") in which the parties expressly agreed that ***any*** claim or dispute related to the Agreement – including the validity of the Provision itself – would be resolved exclusively by binding arbitration. Each Plaintiff assented and agreed to this mandatory Arbitration Provision by "clicking" an electronic box that confirmed his/her acceptance of all terms and conditions in the Membership Agreement.

Plaintiffs allege that during the course of their respective memberships, JetSmarter unilaterally changed the terms of the program to their detriment. As a result, and in direct contravention of the Arbitration Provision, Plaintiffs filed this lawsuit alleging claims for

1

consumer fraud and common law fraud.

As a threshold matter, this Court should enforce the Arbitration Provision, which expressly mandates that "[a]ny claim or dispute between the parties . . . whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration …" (*See* Membership Agreements at § 18). This Provision unequivocally requires that *all* disputes be decided by a neutral decision-maker in arbitration, and *not* by a jury in a lawsuit. Plaintiffs hope to evade this binding Provision, but much to their chagrin, the Federal Arbitration Act ("FAA") and Supreme Court precedent mandate that such agreements to arbitrate be enforced according to their terms. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 2019 U.S. LEXIS 566 (U.S. 2019). Accordingly, this Court should dismiss this case, and compel binding arbitration as the parties expressly agreed in the Membership Agreement. Indeed, other JetSmarter members have commenced arbitration proceedings in which they allege the same or similar claims as Plaintiffs, so this case can and should be coordinated with those matters in the interests of judicial economy, avoidance of inconsistent results and conservation of the parties' resources.

Alternatively, if this Court is disinclined to compel arbitration, it should stay this action pending resolution of a related class action arbitration (the "Class Arbitration") before the American Arbitration Association (the "AAA") in Broward County, Florida. The parties to that Arbitration have engaged in limited discovery and motion practice, and they continue to participate in mediation in hopes of reaching a class action settlement. And significantly, the arbitrator recently ruled that the Arbitration Provision is enforceable and that the claims at issue (which are similar, if not identical to Plaintiffs' here) are arbitrable. (*See* 2/19/19 Class

Arbitration Ruling at 3-5). The arbitrator also certified the class; Plaintiffs qualify as class members, so they have the ability to participate in or opt-out of the class. (*See id.* at 17, 18, 20). Hence, judicial economy mandates a stay of the instant action pending resolution of the Class Arbitration. There is no reason to waste judicial resources and the resources of the respective parties should Plaintiffs be amenable to the terms of a class action settlement. Thus, if arbitration is not compelled, this Court should stay all proceedings pending resolution of the Class Arbitration.

Accordingly, based upon the foregoing, JetSmarter respectfully requests that this Court grant the present Motion and award the relief requested herein.

## I.    FACTUAL BACKGROUND

### A.   Plaintiffs' Allegations

Edward Liceaga alleges that in or about August 2017, he entered into discussions with JetSmarter about renewing and upgrading his JetSmarter membership (which had been in place since July of 2016). (*See* First Amended Complaint (at CM/ECF Doc. No. 16, ("FAC")) at ¶ 39). Plaintiff Liceaga ended up renewing and upgrading his membership in or about September 2017. (*Id.* at ¶ 44). Plaintiff Liceaga alleges that after renewing and upgrading his membership, JetSmarter advised him that it was unilaterally changing the terms of his membership including the elimination of a significant amount of benefits. (*See id.* at ¶¶ 52-58). On or about December 6, 2018, Plaintiff Liceaga filed a Complaint in the Circuit Court of Cook County, Illinois. JetSmarter timely removed this case to this Court on January 7, 2019 based upon diversity jurisdiction. (*See* Notice of Removal at CM/ECF Doc. No. 1).

On February 15, 2019, Plaintiffs filed their First Amended Complaint adding Anthony Brummel and Delphine Pontvieux (who are married) as Plaintiffs and Sergey Petrossov as a

Defendant. (*See* FAC generally). Anthony Brummel alleges that in or about December 2017, he entered into discussions with JetSmarter about upgrading his JetSmarter membership (which had been in place since April of 2017). (*See id.* at ¶ 70). Plaintiff Brummel chose to upgrade his membership at that time, and a few months later, in or about May 2018, Delphine Pontvieux renewed her JetSmarter membership (which had been in place since May of 2017). (*See id.* at ¶¶ 70, 76). Plaintiffs Brummel and Pontieux allege that after they upgraded and renewed their respective memberships, JetSmarter advised them that it was unilaterally changing the terms of their memberships including the elimination of a significant amount of benefits. (*See id.* at ¶¶ 80-84).

**B.**     **The Membership Agreement**

When Plaintiffs upgraded and/or renewed their memberships, they each entered into a separate Membership Agreement with JetSmarter. (*See* Declaration of Mikhail Kirsanov ("Kirsanov Decl.") at ¶ 3, attached hereto as **Ex. A**). In so doing, each Plaintiff acknowledged, accepted and agreed to all terms and conditions of the Membership Agreement including the provision that such agreement may be amended or modified. (*See id.*).

In this regard, Plaintiffs Liceaga's and Brummel's Membership Invoices included the following language directly above the itemized membership fees:

> THE ABOVE PERSON OR ENTITY IS HEREBY REFERRED TO AS "THE MEMBER".
>
> BY REMITTING THE AMOUNT DUE UNDER THIS INVOICE AND ***ACCEPTING THE TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT***, MEMBER WILL PURCHASE JETSMARTER'S SERVICE…

(*See* Liceaga, Brummel Membership Invoices, attached to **Ex. A** as **Exs. A-1, A-2**) (emphasis added). Similarly, Plaintiff Pontvieux's Membership Invoice included the following language above the membership fee:

4

>THE ABOVE PERSON OR ENTITY IS HEREBY REFERRED TO AS "THE MEMBER".
>
>BY *ACCEPTING THE TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT*, MEMBER WILL GAIN ACCESS TO JETSMARTER'S SERVICE…

(*See* Pontvieux Membership Invoice, attached to **Ex. A** as **Ex. A-3**) (emph. added).

Below the itemized charges, the Membership Invoices contained an empty checkbox directly to the left of the phrase, "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT." (*See* **Exs. A-1, A-2, A-3**). Each Plaintiff confirmed his/her acceptance of the Membership Agreement by clicking on the checkbox. (*See id.*; **Ex. A** at ¶¶ 4-6). Plaintiffs had no choice but to click the checkbox in order to access the screen for entering their payment information. (*See id.*). Thus, Plaintiffs could pay their respective invoices only after clicking on the checkbox and signaling his/her acceptance of the Membership Agreement. (*See id.*). Before clicking on the box, Plaintiffs could have accessed the complete Membership Agreement simply by clicking the hyperlink next to the checkbox or the second hyperlink below that box. The language below the checkbox expressly advised Plaintiffs that it was his/her "sole responsibility to review and abide by all of the terms and conditions of the Membership Agreement and all applicable service terms and conditions, as amended from time to time." (*See* **Exs. A-1**, **A-2**, **A-3**).

If Plaintiffs clicked the hyperlinks, they would have been directed to a webpage displaying the Membership Agreement. (**Ex. A** at ¶ 7). The Membership Agreement's opening paragraph plainly stated that Plaintiffs were agreeing "to the following terms and conditions . . . relating to the services provided in relation to Member's subscription to JetSmarter's membership program." (*See* Plaintiffs' Membership Agreements, attached to **Ex. A** as **Exs. A-4**, **A-5**, **A-6**). Among those terms and conditions was the Arbitration Provision requiring that all

disputes be resolved by binding arbitration before the AAA under its Commercial Arbitration Rules:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions[,] or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association [] under the Commercial Arbitration Rules …

(*See* **Exs. A-4**, **A-5**, **A-6** at § 18).

This Provision broadly encompasses any claim or dispute between the parties related to their relationship, obligations or the Agreement. (*See id.*). Hence, Plaintiffs' claims relating to alleged misrepresentations and inaccuracy of the services provided and their causes of action for consumer fraud and common law fraud all fall squarely within the ambits of the mandatory Arbitration Provision. And significantly, there are multiple proceedings commenced by other members alleging the same or similar claims as Plaintiffs that are currently pending in other arbitrations, including the Class Arbitration. (*See* Declaration of Jenna Gushue ("Gushue Decl.") at ¶ 2, attached hereto as **Ex. B**).

C. <u>**The Class Arbitration**</u>

On or about September 5, 2018, other members lodged a Demand for Class Arbitration against JetSmarter with the AAA in Fort Lauderdale, Florida. *(See id.* at ¶ 3). JetSmarter and class counsel agreed to arbitrate the class before the AAA in Broward County, Florida, and an arbitrator has been appointed. (*See id.* at ¶ 4). The parties have engaged in limited discovery, motion practice, and have participated in and continue to participate in mediation in an effort to reach a class action settlement. (*See id.* at ¶ 5). The arbitrator recently ruled that the Arbitration Provision is enforceable and that the claims at issue are arbitrable. (*See id.* at ¶ 6; 2/19/19 Class Arbitration Ruling at 3-5, attached to **Ex. B** as **Ex. B-1**). The arbitrator also certified the class; Plaintiffs qualify as class members, so they have the ability to participate in or opt-out of the

6

class. (*See* **Ex. B** at ¶ 6; **Ex. B-1** at 17, 18, 20). If necessary, a final hearing (*i.e.*, trial) will be held in November 2019. (*See* **Ex. B** at ¶ 6).

### III. LEGAL ARGUMENT

**A.     The Membership Agreement Compels Arbitration Of This Dispute**

The FAA, 9 U.S.C.A. §§ 1-16, expresses a national policy favoring arbitration and requires courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011) (citations omitted). Indeed, the FAA expressly mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2.

In light of the strong public policy favoring arbitration, the Supreme Court has emphasized that questions of arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Id.* at 24-25; *AT&T Mobility LLC*, 563 U.S. at 341.

Under the FAA, there are two elements that courts consider in ruling on a motion to compel arbitration: (1) whether a valid arbitration clause exists; and (2) whether the particular dispute falls within the scope of the arbitration agreement.[1] *Zurich Am. Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); *Sherman v. AT&T Inc.*, 2012 U.S. Dist. LEXIS 40394, *5 (N.D. Ill. 2012). Here, both prongs clearly are met; as such, this action should be dismissed and binding arbitration compelled.

---

[1] As Plaintiffs chose to file this case (instead of commencing arbitration proceedings), they obviously have refused to submit their claims to arbitration. *See Sherman*, 2012 U.S. Dist. LEXIS 40394, at *4 ("[a]rbitration may be compelled … whenever there is … a refusal by one of the parties to submit to arbitration").

7

1. **<u>The Arbitration Provision Is Valid And Enfoceable</u>**

First, a valid written agreement to arbitrate undeniably exists – the Membership Agreement containing the Arbitration Provision – which Plaintiffs acknowledged, accepted and agreed to. (*See* **Ex. A** at ¶¶ 3-7). Plaintiffs expressed his/her agreement to arbitrate by clicking to accept the terms of the Membership Agreement. This is known as a "clickwrap"' agreement, which requires users to click a box or toggle a button to affirmatively accept written terms and conditions. *See, e.g., Sherman*, 2012 U.S. Dist. LEXIS 40394, at *9-10; *Sgourous v. TransUnion Corp.*, 2015 U.S. Dist. LEXIS 13691, *10-16 (N.D. Ill. 2015); *aff'd* 817 F.3d 1029 (7th Cir. 2015). Courts typically enforce clickwrap agreements because they "require[] users to take affirmative action to manifest assent by clicking a button or a checkbox which accompanies a statement instructing users that their click would constitute their assent to the terms at issue." *Id.* If the user does not affirmatively manifest his or her assent to the terms by taking the required action, he or she will not be able to proceed and obtain the offered good or service. *See, e.g., Sherman*, 2012 U.S. Dist. LEXIS 40394, at *10.

Numerous courts, including those in the Seventh Circuit, have enforced clickwrap agreements. *See id.*; *Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 385 (7th Cir. 2007) (enforcing clickwrap agreement that required customers to click assent to pertinent parts of a contract that was available on a website); *DeJohn v. The TV Corp. Int'l*, 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003) (enforcing terms of a contract when a webpage user had opportunity to click on hyperlinked terms); *see also Meyer v. Uber Technologies*, 868 F.3d 66, 80 (2nd Cir. 2017); *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 295 (D. Mass. 2016); *A.V. v. iParadigms, LLC*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008) (citing cases).

In this case, the enforceability of the Membership Agreement is governed by state law

and such agreements generally are enforceable under Illinois law. *See, e.g., Sherman*, 2012 U.S. Dist. LEXIS 40394, at *10-15. The JetSmarter Membership Agreement contains a Florida choice of law provision. (*See* **Exs. A-4**, **A-5**, **A-6** at § 17). Notwithstanding, as set forth below, both Florida and Illinois law favor the enforcement of clickwrap agreements; thus, there is no conflict that would necessitate a choice of law analysis. *See Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 722 (N.D. Ill. 2015) (ruling that no conflict of law analysis is necessary when there is no actual conflict between the laws of the respective states).

"Signifying agreement by clicking on a box on the screen is common in internet commerce." *Sherman*, 2012 U.S. Dist. LEXIS 40394, at * 9. "This type of assent is called clickwrap, in which a webpage user manifests his or her assent to the terms of a contract by actively clicking an 'accept' button in order to proceed." *Id.* The clickwrap process of checking a box next to hyperlinked terms generally provides adequate notice to a consumer. *Id.* In *Sherman*, the court found that the plaintiff received adequate notice of the terms and conditions of a contract for internet services when he checked a box labeled "I have read and agree to the AT&T Terms of Service" where "AT&T Terms of Service" linked to the Terms. *Id.* The court reasoned:

> [Plaintiff] does not deny and cannot deny that he actively clicked that he accepted the hyperlinked Terms, because he would have been unable to proceed with the activation process and would never have received his internet service without clicking his assent. The Terms contain clear and reasonable language, in capital letters, that the customer and AT&T agree to waive the right to a trial by jury and to participate in a class action, and repeat that this arbitration agreement affects the customer's rights, in capital letters. [Plaintiff] has not raised a genuine issue of material fact that the Terms do not provide reasonable notice. Consequently, [Plaintiff] had adequate notice of the Terms, to which he assented at the time of his activation of internet service.

*Sherman*, 2012 U.S. Dist. LEXIS 40394, at *10-11.

And, courts have enforced clickwrap agreements under Florida law, as well. *See, e.g., Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369-70 (S.D. Fla. 2011) (enforcing forum

9

selection clause in clickwrap agreement); *Siedle v. Nat'l Assoc. of Sec. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1143 (M.D. Fla. 2002) (agreeing with multiple decisions enforcing clickwrap agreements).

Here, as in the aforementioned cases, Plaintiffs affirmatively clicked on the checkbox directly adjacent to the hyperlinked-phrase: "I ACCEPT TERMS AND CONDITIONS OF THE MEMBERSHIP AGREEMENT." By clicking in this hyperlink, each was able to access the terms of the Membership Agreement. In fact, the Membership Invoices made a *second* reference to "accepting the terms and conditions of the Membership Agreement," and below the checkbox, there is a *third* reference to the Agreement, as the Invoices stated that the Agreement was available for review at: http://jetsmarter.com/legal/membership. (*See* **Exs. A-1**, **A-2**, **A-3**).

Accordingly, Plaintiffs had adequate notice, the Membership Agreement should be deemed valid, and the terms of that Agreement – including the Arbitration Provision – should be enforced in full. As such, JetSmarter satisfies the first prong, and this Court should hold Plaintiffs to their agreements to arbitrate their disputes before the AAA. (*See* **Ex. B-1** at 4-5) ("the undersigned concludes that JetSmarter and each class member agreed to the [A]rbitration [P]rovision [and] that the [A]rbitration [P]rovision is enforceable").

### 2. An Arbitrable Issue Exists

The second prong is easily satisfied too. Whether an arbitrable issue exists is clearly a question for the arbitrator. In that regard, courts "have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Henry Schein, Inc.*, 2019 U.S. LEXIS 566, *8.

Courts in the Seventh Circuit have recognized that "an agreement to arbitrate a gateway

10

issue" is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Zacher v. Comcast Cable Communs. LLC*, 2018 U.S. Dist. LEXIS 102956, *9 (N.D. Ill. 2018); *quoting Rent-A-Ctr., W., Inc.,* 561 U.S at. 63.  In turn, Courts have ruled that "language defining an arbitrable 'dispute' as including the 'validity, enforceability or scope' of the arbitration agreement clearly demonstrates the parties' intent to delegate these gateway issues to the arbitrator.  *Id.* at *10; *see also Kemph v. Reddam*, 2015 U.S. Dist. LEXIS 38861, *13-14 (N.D. Ill. 2015); *Bayer v. Comcast Cable Commc'ns, LLC*, 2013 U.S. Dist. LEXIS 62061, *11 (N.D. Ill. 2013).  Likewise, "the 'consensus view' of federal case law is that the incorporation by reference of the AAA Rules is clear and unmistakable evidence of an intention to arbitrate arbitrability."  *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016); *see also Wal-Mart Stores, Inc. v. Helferich Patent Lic., LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill 2014) ("where the parties agree to arbitration pursuant to the rules of the [AAA], the parties incorporate the AAA's rules into the arbitration agreement"); *Corrigan v. Domestic Linen Supply Co.*, 2012 U.S. Dist. LEXIS 100961, *6 (N.D. Ill. 2012) ("when parties agree in a valid arbitration agreement that AAA's rules apply, an arbitrator should decide the scope of arbitrability").[2]

      This matter is on "all fours" with the aforementioned cases, because the Membership Agreement expressly states that Plaintiffs' claims and the validity of the Arbitration Provision itself "shall be resolved exclusively" by the AAA "under the Commercial Arbitration Rules." (*See* **Exs. A-4**, **A-5**, **A-6** at § 18).  As such, based upon the clear language of that Provision, the arbitrable element also is satisfied, and this Court should compel arbitration.  (*See* **Ex. B-1** at 5)

---

[2] Rule 7(a) of the of the AAA Commercial Arbitration Rules "empowers an arbitrator to decide the gateway arbitrability issues of validity and scope of the arbitration clause." *Ali v. Vehi-Ship, LLC*, 2017 U.S. Dist. LEXIS 194456, *8 (N.D. Ill. 2017).

("the issues set forth in Claimants' Demand for Arbitration are therefore, properly submitted to arbitration").

Finally, courts also may choose to consider whether the party seeking to compel arbitration waived its right to arbitrate. To determine whether a party has waived arbitration, the court considers "whether, based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Armstrong v. LaSalle Bank Nat'l Assoc.*, 552 F.3d 613, 616 (7th Cir. 2009); *Fuller v. Frontline Asset Strategies, LLC*, 2018 U.S. Dist. LEXIS 61015, *8 (N.D. Ill. 2015).

Here, JetSmarter has in ***no wa****y* "acted inconsistently" with its right to arbitrate, as its first formal act before this Court (via the present Motion) was to seek dismissal of this case of favor of arbitration. Indeed, JetSmarter has not done anything but remove the case to federal court and file the present Motion. It has not filed an Answer to Plaintiffs' Complaint, and no discovery has been served (by any of the parties). Therefore, JetSmarter has not done anything that could even arguably be characterized as waiving its right to arbitration.

Based upon the foregoing, the FAA controls and mandates that this Court dismiss this action and compel arbitration.[3] Because other members have initiated arbitration proceedings alleging the same or similar claims as Plaintiffs here, JetSmarter respectfully requests that this Court grant the present Motion and compel arbitration. The coordination of this action with the

---

[3] As set forth above, the Membership Agreement contains a Florida choice-of-law provision. (*See* **Exs. A-4**, **A-5**, **A-6** at § 17). In the event the FAA somehow does not preempt the Florida Arbitration Code, application of that Code would mandate the same result. *See Fla. Power Corp. v. City of Casselberry*, 793 So. 2d 1174, 1178-79 (Fla. Ct. App. 2001).

other arbitration proceedings will achieve judicial economy, avoidance of inconsistent results, and conservation of the parties' resources.[4]

**B.**     **Alternatively, A Stay Is Appropriate Pending Resolution Of The Class Arbitration**

If, for some reason, the Court is disinclined to compel arbitration, it should stay these proceedings pending resolution of the Class Arbitration.  It is well-settled that a procedural stay is appropriate when judicial economy and avoidance of confusion and possible inconsistent results are involved.  To require the parties to participate in extensive discovery would not be prudent in light of the pending Class Arbitration and mediation.  Instead, a more practical and efficient approach is to await the resolution of the Class Arbitration and then determine whether where to go from there.

> It is well-settled that this Court has broad discretion to stay these proceedings:
>
> A district court's power to stay proceedings is well-established and "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  The Court has "broad discretion" to decide whether a stay is warranted.  When deciding whether to grant a stay, a court should "balance the competing interests of the parties and the interest of the judicial system" by considering the following three factors: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non moving party.

*Mantissa Corp. v. Old Second Bancorp, Inc.*, 2018 U.S. Dist. LEXIS 103365, *6 (N.D. Ill. 2018); *see, e.g., Sherman*, 2012 U.S. Dist. LEXIS 40394, at *15 (granting AT&T's motion to compel arbitration and staying the case pending outcome of arbitration).

Here, a stay of proceedings is entirely appropriate (to the extent this Court decides against dismissal).  Indeed, judicial economy warrants a stay pending resolution of the Class

---

[4] It is worth noting that several claimants have filed lawsuits against JetSmarter wherein (as here) JetSmarter has filed or will be filing motions to dismiss and compel arbitration in accordance with its respective Membership Agreements.  In fact, JetSmarter recently succeeded on such a motion in a case filed in California.  *See Milosavljevic v. JetSmarter, Inc.*, Case No. BC716486 (Cal. Super. Ct. Feb. 20, 2019), Minute Order attached hereto as **Ex. C**.

13

Arbitration. JetSmarter is hopeful that Arbitration will result in a prompt, mediated resolution that will resolve all pending and potential claims against JetSmarter (including Plaintiffs'), at which time, JetSmarter's members will be afforded an opportunity to opt out and pursue other arbitrations (should they desire to do so). Even if Plaintiffs elect to opt out, the arbitrator's substantive rulings – while not having a preclusive effect if Plaintiffs decide to opt-out – may simplify any issues that might be arbitrated between the parties.

Further, Plaintiffs would not suffer any prejudice were this Court to stay this case pending resolution of the arbitration. If they are not satisfied with the resolution and ultimately opt out of the class, each would be free to pursue his/her own claims. As such, a stay would have no impact on their ability to pursue their claims. Conversely, a decision on whether or not to opt-out would be premature as this juncture, as Plaintiffs have no clue what relief he/she may be afforded as a member of the class. Should this case proceed (and not be stayed), the Court, Plaintiffs and JetSmarter all would be forced to expend time and resources that could well be avoided or rendered unnecessary altogether. Thus, the balance of harm to the parties overwhelmingly weighs in favor of a stay.

Moreover, the length of a stay should not be significant. Former Miami-Dade County Circuit Court Judge Ellen Leesfield has been selected as the Arbitrator, the parties have already participated in mediation and continue to do so, and a class has been certified. Thus, a prompt and comprehensive resolution seems plausible. Should that occur, putative class members will receive notice and the opportunity to opt out of the class. This realistically could take place within a matter of months. And if for some reason the parties are unable to reach a settlement by way of mediation, then the arbitration will proceed – with a final hearing (*i.e.*, trial) set to take place later this year, in November.

Accordingly, for the sake of judicial economy, avoidance of inconsistent results, conservation of the parties' resources, and lack of prejudice to Plaintiffs, JetSmarter respectfully requests that the Court grant the present Motion and stay these proceedings pending resolution of the Class Arbitration.

## IV. CONCLUSION

For all of the foregoing reasons, the Arbitration Provision contained in the Membership Agreement should be enforced, and this Court should dismiss this case and compel arbitration of the dispute between the parties (so this action can be coordinated with the similar proceedings pending in arbitration). Alternatively, if, for some reason, the Court is disinclined to compel arbitration, in the interests of judicial economy, this case should be stayed pending resolution of the Class Arbitration.

Dated: March 7, 2019

**GORDON REES SCULLY MANSUKHANI, LLP**

*Attorneys for Defendants*

By: */s/ Daniel E. Feinberg*
Daniel E. Feinberg, Esq.
Illinois State Bar No. 6269724
**GORDON REES SCULLY MANSUKHANI, LLP**
One North Franklin, Suite 800
Chicago, Illinois 60606
(312) 565-1400
dfeinberg@grsm.com

## **CERTIFICATE OF SERVICE**

I, Daniel E. Feinberg, an attorney, hereby certify that a copy of the above and foregoing was filed electronically with the Court of the United States District Court for the Northern District of Illinois (Eastern Division), this 7th day of March, 2019, using the CM/ECF system.

*/s/ Daniel E. Feinberg*